[Civ. No. 21021.   Second Dist., Div. Three.   June 28, 1956.]

MARSHALL E. BROYLES, Appellant, v. ROY W. CARTER, as Municipal Court Marshal et al., Respondents.

Wallace E. Wolfe and Percy V. Hammon for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), and William E. Lamoreaux, Deputy County Counsel, for Respondents.

WOOD (Parker), J.—Appeal from order denying petition for writ of mandate. An alternative writ was not issued. There was no hearing in the superior court.

The petition (by petitioner in propria persona) alleges: On June 30, 1949, petitioner was duly appointed a deputy marshal (of the Municipal Court of the City of Los Angeles) to perform duties as a custodian of property. On July 13, 1950, he was given a permanent civil service status by the Civil Service Commission of the City of Los Angeles. On June 4, 1951, he was promoted from a deputy marshal performing duties of a business property custodian to a deputy marshal performing duties of a car (automobile) crew custodian, which gave him better working conditions and more pay. He continued to perform the duties of car crew custodian until he was suspended from those duties on November 19, 1953, by Roy W. Carter, the present municipal court marshal. On January 2, 1952, he and other members of the Van Nuys marshal's office were given the oath of office under the present regime of the marshal of the municipal courts of Los Angeles County. The form of oath signed by petitioner classified him as a deputy marshal. By taking and signing the oath petitioner was thereby transferred by operation of law to the new regime of the municipal court marshal with Roy W. Carter as marshal. On November 13, 1953, Deputy Marshal Strong and petitioner levied an execution upon an automobile, and while the deputies were waiting for "a promised pay off of the execution and costs" a man unknown to petitioner "made off with" the automobile. Petitioner, in the belief that a felony was being committed, fired two shots from his revolver at the left rear tire of the automobile. By reason of those events petitioner was served with a letter of suspension which became effective on November 19, 1953. On December 3, 1953, petitioner filed a request with the Civil Service Commission of Los Angeles County for a hearing to determine whether the charges were sufficient "to discharge a permanent civil service employee." Also on said December 3 petitioner was served with a second letter, containing the identical charges that were in the letter of suspension, which informed petitioner that he had been discharged as a deputy marshal. On January 7, 1954, a hearing was had before the Civil Service Commission of Los Angeles County. On February 19, 1954, said commission decided in favor of petitioner and sent a letter to him which stated, "After full consideration of the evidence, it was found that the reasons given are not sufficient to justify the discharge, the Commission feeling that the thirty day suspension is sufficient penalty." On February 25, 1954, a letter was sent

to petitioner by the personnel officer of the marshal's office directing petitioner to report to the marshal's office. On March 1, 1954, petitioner reported to that office and he was reassigned to duties as deputy marshal to perform the duties of a business property custodian, which assignment is illegal in that it is a demotion of petitioner. Roy W. Carter acted arbitrarily, capriciously and fraudulently in demoting petitioner. The petitioner asked (in the petition) that the superior court issue an "Alternative Writ of Mandate or An Order to Show Cause in lieu thereof," to grant petitioner relief on "the following points": that the marshal issue a new badge, eliminating the word "Custodian" therefrom; that the marshal return petitioner to duty as deputy marshal performing duties as a car crew custodian; that the marshal, auditor, and Board of Supervisors have warrants issued to pay petitioner $21.54 a day from said November 19, less actual earnings, and to pay for vacations, holidays, sick leave, automobile mileage and parking, attorney's fee, and transcripts; that the court release petitioner from 30 days' penalty imposed by the civil service commission.

As stated in the petition, the petitioner was appointed a deputy marshal to perform duties as a custodian of property. In 1949 when he was appointed, the statutory provision regarding the classification of deputies to perform duties as custodian was "One hundred deputies (custodians), at the fee allowed by law for keeping property." (Deering's Gen. Laws (1944), Act 5238, § 7b [Municipal Court Act of 1925]; Stats. 1943, ch. 307, § 1.) Preceding that provision in said section 7b there were 7 other classifications of deputies for the office of marshal. In 1951 there was a statutory enactment that "there shall be one Marshal for all the municipal courts established in judicial districts of Los Angeles County." That enactment provided, among other things, that the marshal should appoint 115 senior deputies, 35 deputy marshals, and "Two hundred deputies (custodians), at the fee allowed by law for keeping property." (Deering's Gen. Laws (1951), Act 4475, § 7; Stats. 1951, ch. 1420, § 7.) It thus appears that the position in the office of marshal, designated by statute as "deputies (custodians)," is one of three different classifications of deputies. There is no statutory provision or any legal requirement that some custodians shall perform duties as custodians of "business property" and that others shall perform duties as "car crew custodians." There was at the time of petitioner's appointment, and now is, one classifica-

tion of deputies who are custodians of property. Section 1085 of the Code of Civil Procedure provides, in part, that a writ of mandate "[M]ay be issued . . . to any . . . board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such . . . board or person." In *Wallace* v. *Board of Education*, 63 Cal.App.2d 611 [147 P.2d 8], it was said at page 616: " 'The remedy [mandamus] is not a matter of right but is awarded in the exercise of sound judicial discretion. [Citations.] An applicant for a writ must show that his right thereto is clear and certain.' " ▮ A writ of mandate will not be issued to control the discretion of a public officer, that is, it will not be issued to compel the exercise of discretion in a particular manner; but it will be issued to correct an abuse of discretion. (See *Wallace* v. *Board of Education, supra,* p. 616.) ▮ The matter of determining the duties to be performed by petitioner as a deputy marshal within the classification of custodian was a matter within the discretion of the marshal, a respondent herein. The marshal was not specially enjoined by law to assign petitioner to the duties of a car crew custodian; nor was petitioner legally entitled to be assigned to such duties.

▮ Petitioner asserts in effect that taking and signing the oath of office on January 2, 1952 (which written form of oath was that of a deputy marshal) had the effect of classifying him as a deputy marshal, without regard to the duties of custodian of property. Taking and signing the oath of office by petitioner on that day was a formality incident to his automatic transfer, under the new law, from his position in the office of the marshal of the city of Los Angeles to a comparable position in the office of marshal of municipal courts, Los Angeles County. January 2, 1952, was the date provided in the legislation, creating the office of "Marshal of Municipal Courts, Los Angeles County," that appointments to positions (subordinate to marshal) in that office should become effective. The legislation provided that deputies in the offices of various marshals in Los Angeles County, which offices were established under the Municipal Court Act of 1925, should succeed to comparable positions as deputies under the new legislation. (Stats. 1951, ch. 1420,

§ 7, p. 3384.) Petitioner's classification was not changed by reason of his taking and signing the oath.

Petitioner also contends that he was illegally suspended, and he asks that this court review the evidence that was before the civil service commission and set aside the ruling of the commission which upheld his suspension for 30 days. Section 34 of article IX of the Los Angeles County Charter provides, in part: "The Commission shall prescribe, amend and enforce rules for the classified service, which shall have the force and effect of law; . . . The rules shall provide: . . . (12) For suspensions for not longer than thirty days. . . ." Rule 19.01 of the Civil Service Commission provides: "An employee may be suspended by the appointing power for not to exceed thirty (30) days, pending investigation, filing of charges and hearing on discharge or reduction, or for disciplinary reasons, the reasons for such suspension to be forthwith furnished in writing to the employee and a copy filed with the Commission. A suspended employee shall be entitled to answer, explain or deny the charges in writing within ten business days, but shall not be entitled to a hearing. A copy of the answer shall be sent to the Commission and filed as part of the employee's record." As above stated, the commission did not sustain the order discharging petitioner, but ruled that thirty days' suspension was a sufficient penalty. Since a suspension for 30 days could be made without a hearing, there is nothing to be reviewed with respect to the suspension. This contention is not sustainable.

■ Petitioner also contends that he is entitled to pay for "sick leave," vacations, and retirement, the same as deputies who are paid on a salary basis. As above shown, the statutory provision creating the classification under which petitioner holds his appointment provides that he shall be paid "the fee allowed by law for keeping property." Fees to be charged and collected by the marshal are the same as the fees to be charged and collected by the sheriff. (Stats. 1949, ch. 1510, § 27, p. 2690 [now included in Gov. Code, § 71266].) Section 26726 of the Government Code provides, with respect to fees of the sheriff, as follows: "The fee for keeping and caring for property under attachment, execution, or claim and delivery is not to exceed eight dollars ($8) when necessarily employed for an eight (8) hour period or any part thereof. Should an additional keeper or keepers be required during such eight (8) hour period or fraction thereof, the fee for such additional keeper or keepers shall be the same as herein

fixed, but, in no event shall any one keeper receive more than sixteen dollars ($16) during any twenty-four (24) hour period when so employed.'' It thus appears that custodians are piece workers and their compensation is a fee established by statute that is paid by litigants. There is no statutory or other provision, with respect to such custodians, for pay for "sick leave" or vacations. In *Treu* v. *Kirkwood,* 42 Cal.2d 602 [268 P.2d 482], petitioner sought a writ of mandate to compel the state controller to approve and the state treasurer to pay her claim for overtime as a state employee. It was said therein at page 611: ''In the absence of either a valid contract or statute, there is no basis for a recovery . . ..'' In view of that decision, it would seem that, in the present case, in the absence of a statutory provision or contract there is no basis for paying petitioner for sick leave or vacations. ▮ As to retirement, section 31469 of the Government Code states, '' 'Employee' means any officer or other person employed by a county . . . whose compensation is paid by the county . . ..'' Since petitioner herein is not paid by the county, he is not entitled to be included in the retirement system.

The order denying petition for writ of mandate is affirmed.

Shinn, P. J., and Vallée, J., concurred.